# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID P. CAUSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **vs.** | ) | **2:05-CV-333-RDP** |
| | ) | |
| **STEWARD MACHINE** | ) | |
| **COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

The court has before it Defendant Steward Machine Company's Motion for Summary Judgment. (Doc. # 16). The motion has been fully briefed and was deemed submitted, without oral argument, on December 12, 2005. (Docs. # 5, 20). For the reasons outlined below, the court finds that the motion for summary judgment is due to be granted.

## I.      Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor*

*Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[1]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02. The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

---

[1] Although a claim of discrimination under the ADEA can be established by direct or circumstantial evidence, *Jones v. BE & K Engineering Co.*, 146 Fed.Appx. 356, 358-59 (11th Cir. 2005), Plaintiff admits that he has no direct evidence of discrimination in this case. (Doc. # 21, at 9).

II.     **Relevant Undisputed Facts**[2]

Steward Machine Company ("Steward") provides complete manufacturing turnkey responsibility by detailing, drawing, welding, stress relieving, machining, gear cutting and assembling in-house. Whitney Debardeleben is President and CEO of Steward.

A.      **Plaintiff's Employment at Steward**

Plaintiff was hired by Steward as a truck driver in August 1995, when Plaintiff was 44 years old.  (Causey Dep. at 32; Doc. # 22, at Ex. 2).   In 1998, Plaintiff began working in Steward's shipping and receiving department as a "shipping clerk, truck driver," which entailed gathering the appropriate parts to be shipped, weighing and measuring the parts, verifying the parts against the packing slip, boxing the parts for shipment, running the forklift, and "load[ing] out the trucks."  (Causey Dep. at 32-33; W. DeBardeleben Dep. at 169; 176).  Although Plaintiff still occasionally filled in as a truck driver when necessary, another employee was hired to take over his truck-driving position. (Causey Dep. at 34).

Plaintiff's supervisor was David Shugart.  (Causey Dep. at 40).  During Plaintiff's employment, Shugart counseled him about missing parts on shipments "probably around five" times, with the last counseling session occurring in 2003.   (Causey Dep. at 40-43).  DeBardeleben also testified that Plaintiff made numerous mistakes, although those mistakes were not documented.  (W. DeBardeleben Dep. at 333-334).

_____

[2] If facts are in dispute, they are stated in the manner most favorable to Plaintiff.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  The court has also noted when facts are in dispute.

Plaintiff testified that Shugart called him "old man" probably four or five times, although he could not remember the first time Shugart called him that. (Causey Dep. at 64-66).[3]  The last time Shugart called Plaintiff "old man" was in the beginning of 2003.  (Causey Dep. at 64). Plaintiff also heard Shugart call Quinton Harris "old man."  (Causey Dep. at 68).    Other employees also testified that Shugart called them "old man," or that they had heard Shugart use the term "old man."  (Lowery Dep. at 156-157; Watson Dep. at 114; Worsham Dep. at 33). Benny Green, who was directly under Shugart, also called Plaintiff "old man" three or four times.  (Causey Dep. at 66).    Employees also heard Debardeleben refer to other Steward employees, but not Plaintiff, as "old man."  (Sanders Dep. at 84; Justice Dep. at 74-77).

In 2002, Steward hired Freddie Cordes to work in shipping; Cordes had prior experience in the shipping department of a steel company.  (Shugart Dep. at 226-28; W. DeBardeleben Dep. at 172-177).  Soon thereafter, Cordes was transferred to Steward's Cordova operation to handle all of the shipping and receiving in that location.  (Shugart Dep. at 226-28). When the project in Cordova ended, Cordes was transferred back to the shipping department at the main Steward plant, where he was given the same job title as Plaintiff.  (W. DeBardeleben Dep. at 175-177, 186).

---

[3]  At his deposition, Shugart denied using the term "old man."  (Shugart Dep. at 201, 233). Shugart testified as follows:

> Well, that's not a phrase I use.  They might could have accused me
> of a bad temper at times, but not calling anybody "old man."  I don't
> even refer to my dad as that.  They should have looked for something
> else.

(Shugart Dep. at 233).  Despite Shugart's denial, the court must adopt Plaintiff's version of the facts for purposes of ruling on this motion.

Prior to Cordes' transfer back to the main plant, Plaintiff was the only person at Steward who was responsible for verifying information for invoices and bills of lading. (Causey Dep. at 38-39). After Cordes was transferred, Causey would check Cordes' work and the work of James Lee Brindley, who worked in receiving, and Brindley and Cordes would check Causey's work as well. (Causey Dep. at 38). This system of checking behind each other was put in place after Shugart counseled both Causey and Cordes about missing parts in shipments. (Causey Dep. at 41-42). In August 2003, Causey was removed from his position as head of the shipping department, and Cordes was placed in that job. (Shugart Dep. at 233; Causey Dep. at 75-77).

**B.     The Reduction-in-Force**

During 2002 and 2003, Steward unexpectedly lost several big jobs for clients, including a $3.2 million contract and a $1 million contract, which resulted in a lack of work. (C. DeBardeleben Dep. at 21-22; Doc. # 18, Ex. I; Causey Dep. at 51). Steward's production decreased from $31,211,991.00 in 2002 to $17,548,377.00 in 2003, while its sales decreased from $4,758,571.00 in 2002 to $3,407,139.00 in 2003. (Doc. # 18, Ex. I). Therefore, in Spring 2003, Steward began discussing the possibility of a reduction-in-force ("RIF"). (C. DeBardeleben Dep. at 7, 21, 30-32).

In June 2003, in an effort to avoid a RIF, DeBardeleben reduced the hours of plant employees, including Plaintiff, from forty hours to thirty hours per week. (W. Debardeleben Dep. at 73; Causey Dep. at 51). Nonetheless, in February 2004, DeBardeleben informed the Steward employees, including Plaintiff, that Steward would have to implement the RIF and eliminate jobs. (Causey Dep. at 51-53). Steward hired Charles Wilkinson, an outside Human Resources consultant, to analyze the persons selected for the RIF and ensure that Steward was in compliance with anti-discriminatory laws. (C. Debardeleben Dep. at 82-83). Every employee

was considered for the RIF, taking into account the present workload in the shop and any future potential workload. (W. Debardeleben Dep. at 39-45).

At the time of the RIF, there was not enough work in the shipping and receiving department for all of the employees. (W. Debardeleben Dep. at 178; Causey Dep. at 59). Therefore, on February 11, 2004, with the advice of Wilkinson, Steward laid off 25 employees, including Plaintiff. (W. Debardeleben Dep. at 38-39; Doc. # 18, Ex. F; Causey Dep. at 53). At the time of the RIF, the shipping and receiving department at Steward consisted of only three employees – Plaintiff and two other employees who were also over the age of 40. (W. DeBardeleben Dep. at 169). DeBardeleben decided, along with Shugart, who to lay off from the shipping department. (W. DeBardeleben Dep. at 179). Plaintiff was selected for the RIF because DeBardeleben and Shugart assessed his performance as the worst of the three shipping employees, specifically noting his difficulty reading blue prints, creating packing lists, writing dray tickets, and building boxes, in addition to the many customer and manager complaints Steward had received regarding incorrect shipments prepared by Plaintiff. (W. DeBardeleben Dep. at 169-99; Shugart Dep. at 232-43). Nonetheless, despite his propensity for mistakes, but for the downturn in business, Plaintiff would still have been employed with Steward. (C. Debardeleben Dep. at 116).

At the time of the RIF, Steward amended its 401(k) plan so that employees who were eliminated in the RIF could obtain their benefits, and Steward also provided a career transition program to employees affected by the RIF. (Causey Dep. at 53; Doc. # 18, Exs. N, O). Prior to the RIF, the average age of the employees at Steward's main plant was 46.5; after the RIF, the average age was 44.97. (Doc. # 18, Ex. F). Steward recalled back to work only one employee after the RIF – Emmit Kerr (54), who was a crane operator. (W. Debardeleben Dep. at 133). On

6

March 19, 2004, Steward Machine applied for assistance with the Department of Labor due to their loss of business. (C. Debardeleben Dep. at 22-24).

### C.       Plaintiff's Claims

On February 27, 2004, Plaintiff filed an EEOC charge against Steward alleging age discrimination. (Doc. # 18, Ex. Q). On July 30, 2004, former Steward employee Lee McGhee instituted an action in the United States District Court for the Northern District of Alabama against Steward for age discrimination, and the case was assigned to The Honorable William M. Acker. On August 4, 2004, McGhee amended his complaint to add nine former Steward employees, including Plaintiff. On February 11, 2005, Judge Acker severed the employees' claims into ten separate cases, and Causey's case was assigned to the undersigned. On April 21, 2005, Plaintiff amended his complaint to add a claim for ERISA retaliation.

## III.    ADEA Age Discrimination Claim

The ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to fall under the ADEA's protections, an employee must be "at least 40 years of age." 29 U.S.C. § 631(a). This Circuit has adopted a variation of the *prima facie* case standard articulated by the Supreme Court for Title VII claims in *McDonnell Douglas* for cases arising under the ADEA. *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir.1992). "Generally, a plaintiff in a job-reduction case can establish a *prima facie* case by demonstrating: (1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a

fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990); *see also Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003). "Where a particular job position is entirely eliminated for nondiscriminatory reasons, for the plaintiff to prevail against the employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Earley*, 907 F.2d at 1083.[4]

---

[4] Plaintiff argues that he satisfies the second prong of the ADEA RIF *prima facie* case because he indisputably was qualified for his former position in shipping and receiving at the time of the RIF. Plaintiff points out the disjunctive nature of the second prong and maintains that he only must prove one or the other and not both: *either* that he was qualified for his former position *or* that he was qualified to assume another position. (Doc. # 21, at 7-8). Plaintiff's argument is flawed for several reasons. First, Plaintiff's reliance on *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041 (11th Cir. 1989), in support of his contention is misplaced. In *Verbraeken*, the Eleventh Circuit did not address the question of whether the employee's position was eliminated, and therefore *Verbraeken* is not applicable here. *Verbraeken*, 881 F.2d at 1046-48 (11th Cir. 1989). Moreover, Plaintiff's interpretation of the second prong of the ADEA RIF *prima facie* case is not consistent with *Earley* and its progeny. As the court in *Earley* made clear, where a job position is eliminated entirely, demonstrating "qualification for his current position is not enough." *Earley*, 907 F.2d at 1083. Plaintiff attempts to challenge the holding of *Earley* by citing to *Williams v. Vitro Services Corp.*, 144 F.3d 1438 (11th Cir. 1998), which held that "failure to show qualification for both the current job and a second, vacant position is not fatal to the plaintiff's *prima facie* case." *Vitro*, 144 F.3d at 1442. What Plaintiff fails to mention, however, is that the *Vitro* court *limited its holding* to cases in which "a plaintiff contends that his position has been consolidated or reassigned to other employees." *Vitro*, 144 F.3d at 1442. In this case, it is undisputed that Plaintiff's position was eliminated and not merely consolidated – Plaintiff admits that Steward has not hired anyone in shipping and receiving. (Doc. # 21, at 6-8; Causey Dep. at 41); *see Hallman v. Reynolds Metals Co.*, 2000 WL 682887, at * 3 (N.D. Al. 2000) (Blackburn, J.)("The plaintiff and defendant dispute whether [plaintiff's] previous position was eliminated, or merely consolidated []. Viewing the evidence and drawing reasonable inferences favorable to the plaintiff, this court finds that there is no genuine issue of material fact as to whether [plaintiff's] position was eliminated. Her position was eliminated, with some duties going to [another employee's] position and other duties transferred to [another office location].") Because Plaintiff's position was eliminated, in order to establish the second element of the *prima facie* case, Plaintiff cannot just show that he was qualified for his former position; he must show that he was qualified for another available position.

Here, there is no dispute that Plaintiff was in the protected age group or that he suffered an adverse employment action. Nevertheless, the court finds that Plaintiff has failed to establish a *prima facie* case, because, under the second prong of the RIF *prima facie* case, he has failed to show that he was qualified for another available position at the time of the RIF and, under the third prong, he has failed to show evidence of discriminatory intent.

### A.    Qualified for Another Available Position

An employee meets the second prong of the RIF *prima facie* test by showing that a position was "available in the company at the time" that the employee's position was terminated. *Earley*, 907 F.2d 1077, 1083 (11th Cir.1990); *see also Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996); *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 568 (11th Cir.1992). This prong is not met if a position exists "either well before the time of plaintiffs' termination or several months after their termination." *Earley*, 907 F.2d at 1083.

It is undisputed that no available position existed in the shipping and receiving department at the time Plaintiff's position was eliminated. (W. DeBardeleben Dep. at 169-99). Steward has not hired anyone in shipping and receiving. (Causey Dep. at 41).   Rather, Plaintiff apparently claims that he should have been reassigned to a truck-driving position because it is undisputed that Plaintiff had the ability to drive a truck. (W. DeBardeleben Dep. at 183).

Plaintiff's argument is flawed because Steward did not have an available truck-driving position to which Plaintiff could be assigned.  Plaintiff incorrectly speculates that Steward had an available position because Gary Brown, who had been doing some of the truck driving, quit two days prior to the RIF. (Doc. # 21, at 21-22).   In reality, as Plaintiff admitted during his deposition, Steward had not employed a full-time truck driver since 2002; George Jackson, who was 68 at the time of the RIF and also a member of the age protected class, fulfilled truck-

9

driving needs while working primarily as a mechanic.  (Causey Dep. at 77-78; W. DeBardeleben Dep. at 198). It is undisputed that Steward had very little trucking work at the time of the RIF and did not hire another truck driver until April 2005 – more than a year after the RIF and after Jackson's death. (Shugart Dep. at 134-38, 235-41).[5]   Therefore, because Plaintiff has not demonstrated that he was qualified for an available position with Steward at the time of the RIF, as a matter of law, Plaintiff cannot prove his *prima facie* case and summary judgment is appropriate for this reason alone.

>       **B**.       **Evidence of Discriminatory Intent**

The court also finds that Plaintiff has failed to present evidence of discriminatory intent to fulfill the third prong of his *prima facie* case.  To satisfy the intent requirement, "the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining a plaintiff because of his age, or (2) that defendant regarded age as a negative factor in such consideration." *Allison v. Western Union Tel. Co.*, 680 F.2d 1318, 1321 (11th Cir.1982) (internal citations omitted). The Eleventh Circuit has noted that an employee "face[s] a difficult burden" of showing discriminatory motive in an age discrimination case when the primary decisionmakers are "well over age forty and within the class of persons protected by the ADEA," as they are in this case.  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).  Debardeleben (52) and Shugart (48), who were both members of the protected class at the time of the RIF, decided to eliminate Plaintiff's position. (W. DeBardeleben Dep. at 169; Shugart Dep. at 8).

---

[5] Moreover, Plaintiff never applied nor expressed an interest in a truck-driving position. (Causey Dep. at 49).  *See, e.g., Smith v. J. Smith Lanier & Co.*, 352 F. 3d 1342, 1344-45 (11th Cir. 2003) (finding that a general interest in being rehired without submitting an application is not enough to establish a *prima facie* case of age discrimination).

Plaintiff's main evidence of alleged discriminatory intent is the repeated use of the term "old man" to refer to him and other Steward employees at work. The court finds this evidence unpersuasive. Although the Eleventh Circuit has held that age-negative comments that fall below the standard required for direct evidence (as do the comments in this case[6]) can take an ADEA plaintiff through the summary judgment threshold, the Eleventh Circuit reached that conclusion in a case where the age-negative comments *were coupled with the company's failure to move the plaintiff to another available job. Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987) (noting that not moving plaintiff to another job raised an issue for trial "[w]hen coupled with the age-related comments allegedly made by the supervisors"). In this case, however, there were no available positions for which Plaintiff applied and no failure on behalf of Steward to transition Plaintiff into an available position.

Thus, this court is left only with stray "old man" comments unrelated to the decisionmaking process – comments which the Eleventh Circuit has held are insufficient standing alone to establish discriminatory intent. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 611 (11th Cir. 1987)(holding supervisor's statement "at your age, I don't believe you could pass [a physical examination]" was "too attenuated" to employer's hiring practices to be of any "legal significance"). Moreover, the "old man" references in this case appear to be nothing more than a playful nickname used by numerous Steward employees to refer to each other – not "age-negative" comments that indicate discriminatory intent. Numerous Steward employees testified that they, or others they know, have been called "old man" by another Steward employee on at least one occasion. (Causey Dep. at 64-66; Lowery Dep. at 156-157;Watson

---

[6] As noted earlier, Plaintiff admits that the "old man" comments are not direct evidence of discrimination. (Doc. # 21, at 9).

11

Dep. at 114; Worsham Dep. at 33; Sanders Dep. at 84; Justice Dep. at 74-77).  Even Plaintiff

testified that he was not offended by Shugart's habit of referring to him as "old man," nor did he

think the comments were actually a reference to his age.  (Causey Dep. at  64-70)(noting "I

didn't think he meant anything about my age").

Plaintiff's suggestion that the statistical evidence reveals discriminatory intent also

misses the mark because his arguments present only half of the story.  Although Plaintiff avers

that he was the oldest person in the shipping and receiving department to be terminated (Doc. #

21, at 10), Plaintiff fails to mention that both of the employees retained in shipping and receiving

after the RIF were also over 40 - Freddie Cordes (44) and James Lee Brindley (45).  Although

Plaintiff notes that the average age of employees terminated during the RIF was 52.84,[7] he fails

to mention that the average age before and after the RIF was in the 40+ range and changed only

1.53 years, which is not statistically significant.[8]  *See, e.g., Carter v. City of Miami*, 870 F.2d

578, 584 n.19 (11th Cir. 1989).

Viewing the evidence in the light most favorable to the Plaintiff, the court finds that

Plaintiff has not presented evidence of discriminatory intent from which a reasonable jury could

conclude that Plaintiff's job was eliminated because of his age or that Steward "regarded age as

a negative factor in such consideration." *Allison*, 680 F.2d at 1321.[9]  Accordingly, Plaintiff has

---

[7] Employees who were younger than Plaintiff were also selected for termination in the RIF, including Henry Brown (32); Stacey Gillian (29); and Christopher Langley (35).  Likewise, Steward also retained employees who were older than Plaintiff, including as James R. Brown (61); Larry Wade (61); Simmes Bevill (62); Jerry F. Hampton (61); Rachel Hill (61); Shirley Scrivner (63); Jerry Shivers (61); Charles Whittington (64).

[8] The average age before the RIF was 46.5 and after the RIF was 44.97. (Doc. # 18, Ex. F).

[9] Plaintiff also attempts to show discriminatory intent by disproving Defendant's articulated reasons for eliminating his position.  As noted in Section III.C., *infra*, the court finds Plaintiff's pretext arguments to be without merit.

failed to satisfy the third prong of his *prima facie* case, and Steward's motion for summary judgment is due to be granted for that second reason.

### C.      Legitimate Non-Discriminatory Reasons

Even assuming that Plaintiff has met his *prima facie* burden, summary judgment is due to be granted on Plaintiff's age discrimination claim because Steward has articulated legitimate, nondiscriminatory reasons for eliminating Plaintiff's position which Plaintiff has not demonstrated are pretextual.

It is undisputed that Steward lost several projects in 2002 and 2003 which resulted in a lack of work and negative cash flow. (C. DeBardeleben Dep. at 21-22; Doc. # 18, Ex. I; Causey Dep. at 51).  Although Steward attempted to cut costs by other measures, it eventually concluded that a RIF was necessary. (C. DeBardeleben Dep. at 7, 21, 30-32; W. Debardeleben Dep. at 73; Causey Dep. at 51-53). The Eleventh Circuit has recognized that a RIF which results in the elimination of a position is a legitimate, non-discriminatory reason for termination of an employee. *Tidwell v. Carter Products*, 135 F.3d 1422, 1426 (11th Cir. 1998); *Zaben v. Air Products & Chem., Inc.*, 129 F.3d 1453, 1457-58 (11th Cir. 1997).

Thus, the salient question is whether Steward had legitimate, nondiscriminatory reasons for selecting Plaintiff's position for elimination.  It is undisputed that Steward did not have enough work to sustain three employees in shipping and receiving.  Steward selected Plaintiff for the RIF due to his work performance, specifically his difficulty reading blue prints, creating packing lists, writing dray tickets, and building boxes, and due to customer and manager complaints regarding incorrect shipments prepared by Plaintiff.  (W. DeBardeleben Dep. at 169-99; Shugart Dep. at 232-43).

In an attempt to show pretext, Plaintiff offers his own opinion that he was able to perform all of his job duties without error or difficulty. (Doc. # 21, at 18-24). This argument fails for at least two reasons. First, Plaintiff does not dispute that DeBardeleben received customer and manager complaints about his performance. Second, and in any event, Plaintiff's own opinion of his performance is not relevant – "[t]he inquiry of pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). Plaintiff also calls attention to the lack of written documentation of his errors, a fact that cuts no ice at all given that Plaintiff admits that he made mistakes, was verbally counseled for those mistakes, and was demoted in 2003 from his position as head of shipping and receiving because of his mistakes. (Causey Dep. at 40-43, 72-76).

The court finds that Plaintiff has not adduced sufficient evidence to lead a reasonable factfinder to conclude that Defendant's reasons for eliminating Plaintiff's position were pretextual. Accordingly, for this third independent reason, Steward's motion for summary judgment is due to be granted as to Plaintiff's age discrimination claim.

## IV.   ERISA Retaliation Claim

Plaintiff's retaliation claim under ERISA also fails to survive summary judgment. Section 510 of ERISA provides: "It shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]." 29 U.S.C. § 1140. "A plaintiff need not show that the sole reason for the termination was to interfere with rights protected by ERISA; he need only prove that a specific intent to violate ERISA partly motivated the employer." *Nero v. Industrial Molding Corporation*, 167 F.3d 921, 927 (5th Cir.

1999). To establish a *prima facie* case of ERISA retaliation, Plaintiff must show that: (1) he is entitled to ERISA's protection, (2) he was qualified for the position, and (3) he was discharged under circumstances that give rise to an inference of discrimination.  *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000).

Plaintiff contends that his job elimination was in retaliation for his wife's extensive use of Steward's health plan, which was converted to a self-insured plan in 2004.   Plaintiff suspects that the decision to transition to a self-insured plan indicates that "the company was gambling that they could save money by taking the chance that employees would not become sick." (Doc. # 21, at 23-24). Plaintiff's retaliation claim fails because he has submitted only argument and conjecture - not evidence - to support his *prima facie* case.

First, it is important to note that Plaintiff admitted at his deposition that he did not think he was terminated for his use of Steward Machine's health plan.  (Causey Dep. at 62-63). Moreover, Plaintiff has presented no evidence to suggest that the decisionmakers in this case had any knowledge of how much he used the health plan. To the contrary, DeBardeleben testified that he had no knowledge concerning which employees use Steward's health plan the most.  (W. DeBardeleben Dep., at 329-30).   In retaliation cases, the employee must demonstrate "the employer was aware of the protected expression at the time it took adverse action," *Gold Smith v. City of Atmore*, 996 F.2d 1155, 1163 n. 11 (11th Cir. 1993), and therefore Plaintiff's failure to present evidence of knowledge of the decisionmakers is fatal to his ERISA retaliation claim. Summary judgment in favor of Steward is appropriate on this claim.

## V.     Conclusion

For the reasons stated above, the court finds that Defendant's motion for summary judgment is due to be granted.  A separate order will be entered.

**DONE** and **ORDERED** this _____22nd_____ day of December, 2005.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

16